UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RICHARD P. BLAKE,

                Plaintiff,

   -v-                                              6:09-CV-942

MICHAEL S. ROZOWICZ,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                      OF COUNSEL:

TOWNE, RYAN & PARTNERS, P.C.          ELENA DEFIO KEAN, ESQ.
Attorneys for Plaintiff                            JAMES T. TOWNE, JR., ESQ.
450 New Karner Road                           SUSAN F. BARTKOWSKI, ESQ.
P.O. Box 15072
Albany, NY 12205
137 Maple Avenue                                   FRANCINE R. VERO, ESQ.
Saratoga Springs, NY 12866

LOMBARDI, WALSH, WAKEMAN,            PAUL E. DAVENPORT, ESQ.
   HARRISON, AMODEO & DAVENPORT, P.C.
Attorneys for Defendant
Three Winners Circle
Albany, NY 12205

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

## I. **INTRODUCTION**

On August 18, 2009, plaintiff Richard P. Blake ("plaintiff" or "Blake") filed this action against defendant Michael S. Rozowicz ("defendant" or "Rozowicz"). Plaintiff brings state law claims alleging violations of New York Debtor and Creditor Law §§ 273, 274, 275, and

276 and New York Business Corporation Law § 1006.[1]  These claims arise from defendant's allegedly fraudulent transfer of corporate assets, which prevented the corporation from honoring its contractual and court-ordered financial obligations to plaintiff.

The parties have completed discovery, and Rozowicz has filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  In the alternative, defendant seeks to preclude the testimony of plaintiff's expert.  Plaintiff opposes and has filed a cross-motion for summary judgment.  Oral argument was heard on May 31, 2012, in Utica, New York.  Decision was reserved.

## II. FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed.  Rozowicz was the sole shareholder and president of two corporations:  Condor Pontiac, Cadillac, Buick and GMC Trucks, Inc. and Condor Chevrolet, Pontiac, Buick, Olds and Geo, Inc. (collectively "Condor").  The first corporation owned and operated a car dealership in Catskill, New York ("the Catskill dealership"), and the second corporation owned and operated a dealership in Great Barrington, Massachusetts ("the Great Barrington dealership").  Defendant personally owned the real property on which the Catskill dealership was located.  Defendant asserts that he also personally owned the equipment in the Catskill dealership.  Plaintiff maintains that the equipment belonged to Condor.

On June 1, 2003, Blake and Condor entered into two separate employment contracts through which Blake would serve as the general manager of both dealerships for ten years

---

[1] In his complaint, plaintiff also asserted claims under New York Debtor and Creditor Law §§ 273-a and 276-a.  However, plaintiff has voluntarily abandoned these claims.  See Pl.'s Mem. of Law, ECF No. 48-1, 2.  Subject matter jurisdiction is based on the diversity of the parties.  Plaintiff is a New York resident, and defendant is a resident of Florida.

and receive $1500.00 per week plus sales commissions, bonuses, and deferred compensation of $50,000 per year. Plaintiff remained so employed until he was terminated on October 1, 2004. Defendant has refused to provide plaintiff with deferred compensation payments and bonuses due under the contracts. On August 23, 2005, plaintiff's counsel sent a letter to the Great Barrington dealership advising Condor of the alleged breach of contract.

On August 18, 2005, Rozowicz entered into a written agreement to sell the Catskill dealership to Leonard and Kathy Romeo ("the Romeos") for $600,000, subject to adjustments. On September 8, 2005, plaintiff's counsel sent a letter to defendant's counsel requesting that Blake be listed as a disclosed creditor in the event Condor is sold. On November 11 or 18, 2005, Rozowicz formally sold the Catskill dealership to the Romeos.[2] Defendant retained ownership of the real property on which the dealership was located. On November 11, 2005, defendant and Mr. Romeo entered into a written lease agreement in which Mr. Romeo leased the property, building, and equipment[3] in the Catskill dealership for a five-year term at $14,500 per month. The rental payments were made directly to defendant. At the end of November 2005, defendant received a total of $18,128.40 in checks drawn from a Condor corporate account.

The Great Barrington dealership ceased business operations in 2006. In April 2006 Blake filed a lawsuit in the Supreme Court, Greene County, against Condor for breach of the employment contracts. On December 20, 2007, the acting Supreme Court Justice granted

---

[2] Defendant's statement of material facts indicates that the sale closed on November 11, 2005. Plaintiff does not dispute this. However, other documents filed by defendant suggest the closing instead occurred on November 18, 2005.

[3] This equipment includes the automobile lifts, tools, and furniture identified as the "Leased Assets" and listed in Exhibit B of the lease agreement. See Bartkowski Aff., Ex. H, ECF. No. 67-1, 14–15.

- 3 -

default judgment in plaintiff's favor. On February 12, 2008, judgment was entered in favor of Blake and against Condor in the amount of $144,810.49.[4] Condor was dissolved on December 19, 2008, and its assets were liquidated. Plaintiff alleges that he did not receive notice of the dissolution. Plaintiff was not listed as a creditor of Condor, did not receive any of the proceeds of the liquidation, and has not received any payment toward the outstanding default judgment.

## III. **DISCUSSION**

Blake alleges that Rozowicz fraudulently transferred to himself Condor's corporate assets and proceeds from the sale and lease of the Catskill dealership instead of fulfilling Condor's financial obligations to plaintiff. Defendant asserts that the transfers were for fair consideration, payments for outstanding debts, or involved assets that he owned personally. Defendant acknowledges receiving some payments from Condor, but claims that such were reimbursement for payments he made to cover rent, taxes, and other services. Defendant denies taking any of the approximately $600,000 in sale proceeds and maintains that this money was used to pay off existing corporate debts.

### A. **Motion for Summary Judgment—Legal Standard**

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548,

---

[4] Although the default judgment is in the amount of $144,810.49, plaintiff seeks a judgment against the defendant in this action in the sum of $142,000.

- 4 -

2552 (1986) (citing Fed. R. Civ. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Id. at 250 n.4, 106 S. Ct. at 2511 n.4. The failure to meet this burden warrants denial of the motion. Id. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553. Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also Anderson, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. New York Debtor & Creditor Law §§ 273, 274, 275—Constructive Fraud

Blake alleges that Rozowicz engaged in constructive fraud by transferring Condor's corporate assets in such a manner as to prevent Condor from fulfilling its financial obligations to Blake, a creditor.

Under New York Debtor and Creditor Law ("DCL"), a conveyance is deemed constructively fraudulent if it is made without "fair consideration" and if one of the following considerations is met: (1) the transferor is insolvent or will be rendered insolvent by the transfer in question (§ 273); (2) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital (§ 274); or (3) the transferor believes it will incur debt beyond its ability to pay (§ 275). In re Sharp Int'l Corp., 403 F.3d 43, 53 (2d Cir. 2005). The intent of the transferor is irrelevant. Id.

The threshold issue of fair consideration is analyzed as follows: "(1) the recipient of the debtor's property must either (a) convey property in exchange or (b) discharge an antecedent debt in exchange; and (2) such exchange must be a 'fair equivalent' of the property received; and (3) such exchange must be in 'good faith.'" Id. (alterations omitted). "[T]he statutory requirement of 'good faith' is satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent scheme." HBE Leasing Corp. v. Frank, 48 F.3d 623, 636 (2d Cir. 1995) (noting a policy of protecting innocent "purchasers for value who have received the debtor's property without awareness of any fraudulent scheme").

Generally, "the preferential repayment of pre-existing debts to some creditors does not constitute a fraudulent conveyance, whether or not it prejudices other creditors, because the basic object of fraudulent conveyance law is to see that the debtor uses his limited assets to satisfy some of his creditors." Id. at 634 (internal quotation marks and alteration omitted). However, New York courts have carved out one exception to this rule: "preferences to a debtor corporation's shareholders, officers, or directors are deemed not to be transfers for fair consideration." Id.

- 6 -

**1. Sale of the Catskill Dealership**

It is undisputed that the Catskill dealership was sold to the Romeos, unrelated third-parties, for approximately $600,000 on November 11 or 18, 2005. Plaintiff concedes that this "is a large sum of money" but concludes that it does not constitute fair consideration because the transaction as a whole lacked good faith. Pl.'s Mem. of Law, ECF No. 48-1, 7. However, there is nothing in the record to suggest the Romeos, the transferees, had either actual or constructive knowledge of any alleged fraudulent scheme or of Condor's outstanding debt to plaintiff. Thus, the sale of the dealership to the Romeos was not a fraudulent conveyance because it involved fair consideration.

Blake's actual allegation of constructive fraud instead pertains to what happened to the $600,000 thereafter. Plaintiff alleges that defendant converted at least part of this sum, which belonged to Condor, into his own funds to avoid the financial obligation Condor owed to plaintiff. Rozowicz denies receiving any of the $600,000 and asserts that this money was used to discharge pre-existing debts incurred by the corporation.

The records related to Condor's account at Berkshire Bank indicate a balance of "–284,182.53" dollars on November 18, 2005. Rozowicz Aff., Ex. D, ECF No. 84-5, 10. On that same date, a deposit was made in the amount of $616,412.06. Defendant asserts that this reflects the proceeds from the sale of the Catskill dealership. This left a balance of $332,229.53 in Condor's account. Also on November 18, 2005, two withdrawals were made from this account—one for $52,227.91 and the other for $151,848.95. Defendant asserts, and an email from a Berkshire Bank official confirms, that these two withdrawals were used to pay off specific existing corporate bank loans. Two other withdrawals were made from this account within the same week—one in the amount of $108,256.75 and the other for

$14,497.55. In the account record, these withdrawals are described as "GENERAL MOTORS A - EDI PAYMTS." Id. at 11. Defendant maintains that these sums were used to pay off outstanding debts to General Motors Corporation. These payments account for the proceeds from the sale of the Catskill dealership and support defendant's assertion that he did not personally receive any of the approximately $600,000 from the sale.

Plaintiff correctly notes that the record includes copies of eight Condor checks dated November 23, 24, and 28, 2005, and paid to the order of "Michael Rozowicz" in the amount of $2266.05—for a total of $18,128.40. Bartkowski Aff., Ex. I, ECF No. 60-1 (check nos. 845, 860, 877, 898, 917, 935, 953, 966). However, there is no evidence that any of this money came from the sale proceeds. Instead, as evidenced by the Berkshire Bank records, these proceeds were used to pay off existing debts to the bank and General Motors. Moreover, the checks made payable to defendant were drawn from a completely separate corporate account than the one in which the proceeds from the sale of the Catskill dealership were deposited.

Even viewing the evidence in the light most favorable to plaintiff for purposes of defendant's motion for summary judgment, there is nothing in the record from which to infer that the $18,128.40 defendant received from Condor came from the proceeds from the sale of the Catskill dealership. Instead, the only reasonable conclusion supported by the record is that the sale proceeds were used to pay off pre-existing debts and were not converted to defendant's personal use.

Although the $18,128.40 in checks Rozowicz received from Condor in November 2005 did not come from the sale proceeds, they nonetheless lacked fair consideration. Indeed, defendant acknowledges that these checks "were to pay me from the corporation for back

rent and services that I provided to it. The checks were to pay debts past due and owed to me by the corporation." Rozowicz Aff., ECF No. 42-2, ¶ 13. As the sole shareholder and president of Condor, defendant may not receive preferential payment of his debts from the corporation. Blake has therefore established the threshold showing of lack of consideration for his DCL §§ 273, 274, and 275 claims related to the $18,128.40 in corporate funds defendant received in November 2005.

Defendant's motion, and his opposition to plaintiff's cross-motion, is based solely on the existence of fair consideration. He puts forth no argument with respect to the remaining elements of the DCL claims. Evidence in the record supports plaintiff's assertion that Condor was insolvent or was rendered insolvent by the transfers to defendant (DCL § 273); was left with unreasonably small capital to conduct business (DCL § 274); and knew such transfers would prevent it from paying present and future creditors (DCL § 275). Defendant acknowledged that "[d]uring the early 2000's both dealerships were losing copious amounts of money and I was pumping my personal money into it to keep them afloat." Rozowicz Aff., ECF No. 42-2, ¶ 5. According to the Berkshire Bank records, Condor's account balance at the end of November 2005 was "–$14,401.42." Rozowicz Aff., Ex. D, ECF No. 84-5, 11. This was after over $600,000 in proceeds from the sale of the Catskill dealership was deposited in that account. Further, the Great Barrington dealership ceased business operations in 2006, not long after the transfers at issue.

Accordingly, defendant is entitled to summary judgment with respect to the proceeds from the sale of the Catskill dealership to the Romeos, and plaintiff is entitled to summary judgment with respect to the $18,128.40 in corporate checks that was transferred to defendant in November 2005.

## 2. **The Catskill Dealership Equipment**

Mr. Romeo leased the Catskill dealership property, building, and equipment for five years at $14,500 per month, which was paid directly to Rozowicz.[5]  Defendant personally owned the real property and building.  Plaintiff claims that the equipment belonged to Condor and defendant fraudulently conveyed it, or the proceeds from renting it, to himself instead of using it to pay off Condor's creditors.  Defendant argues that the equipment always belonged to him personally, not to Condor.  If the equipment belonged to defendant personally, then there could not have been a fraudulent transfer from Condor.  If, however, the equipment belonged to Condor, then the transfer of its ownership or rental proceeds to defendant—the sole shareholder and president of Condor—instead of to Condor's creditors would be constructively fraudulent in the same manner as the $18,128.40 in corporate checks discussed above.

In support of his argument, plaintiff points to Condor's 2002 financial statement, which lists the equipment as corporate assets.  See Bartkowski Aff., Ex. C, ECF No. 45-4.[6]  Further, Condor's depreciation schedules for 2003–2004 list some, not all, of the equipment as corporate assets.  Id., Ex. D., ECF No. 46-1.  Finally, in his September 29, 2010, sworn deposition, defendant acknowledged that the corporation owned the automobile lifts that were leased to Mr. Romeo.  Id., Ex. O, ECF No. 68-1, 7:4–17.  He further confirmed that office furniture and other equipment had been purchased by Condor in its course of

---

[5]  It is undisputed that 3.57% of the monthly rent was attributable to the leased equipment.  This represents $517.65 per month.

[6]  Plaintiff also claims that Condor's 2005 tax return lists the equipment as business assets.  While the tax return lists "FIXED ASSETS" that depreciated in value, it is not clear that these assets are the equipment at issue.  See id., Ex. E, ECF No. 51-1.

business. Id. at 12:5–8.[7]

In response, Rozowicz has supplied written minutes from the first meeting of Condor's Board of Directors, held on December 15, 1992. Defendant claims that this document shows he personally acquired the equipment when he purchased the Catskill dealership in 1992. However, these meeting minutes do not definitively support such a conclusion. This document indicates that Rozowicz assigned to the corporation "all of his right, title and interest to acquire the tangible and intangible personal property assets" obtained as a result of his purchase of the Catskill dealership. Rozowicz Aff., Ex. B, ECF No. 84-3, 2. It then separately allocates "real estate—to be acquired by Michael S. Rozowicz in his individual capacity" in the amount of $860,000 and "tangible and intangible personal property and assets" in the amount of $290,000. Id.

It is reasonable to infer, therefore, that defendant retained personal ownership of the "real estate" but assigned all of his rights, title, and interest in the "tangible and intangible personal property and assets" to the corporation. Defendant maintains that the term "real estate" represents the real property, fixtures, and equipment located in the dealership, while the term "tangible and intangible personal property and assets" refers only to "the dealership

---

[7] This testimony is not changed by defendant's subsequent affidavit, in which he denies that Condor ever owned any of the equipment. Such conflicting accounts merely underscore the general tenor of Rozowicz's deposition testimony, which suggests he has no clear recollection of who actually owned the equipment. This is evidenced by the following exchanges:
Q. How did they [the automobile lifts] get to your ownership?
A. I don't know. I don't know. I don't know. I don't know.

Q. Now, so your recollection from 16 years ago, is that Condor . . . did not buy any assets . . ., that you personally bought everything, you bought the real estate, the furniture, the fixtures, the desks, the chairs, your corporation didn't buy any?
A. I recollect that. I think so. I don't know. You have to look in the records to see.
Q. Okay.
A. It is a long time ago we did, like I said, we did a lot of deals.
Id., Ex. O, ECF No. 68-1, 7:18–19; Id. ECF No. 70-1, 33:4–14.

itself." Rozowicz Aff., ECF No. 84-1, ¶ 6. However, neither of these terms are defined in the meeting minutes, and defendant does not identify anything else to support his interpretation. He thus fails to meet his burden of proof to establish an issue of material fact with respect to the ownership of the equipment.

In short, the only reasonable inference to be drawn from the evidence in the record is that Rozowicz personally owned the "real estate"—meaning the real property on which the Catskill dealership was located—but assigned his rights, title, and interest in the remaining assets, including the equipment, to Condor. Therefore, defendant engaged in constructive fraud by subsequently transferring ownership and value of this equipment to himself—the sole shareholder and president of the corporation—instead of using it to pay Condor's creditors.

Accordingly, both motions for summary judgment on the constructive fraud claims will be denied in part and granted in part. Defendant will be granted summary judgment with respect to the proceeds from the sale of the Catskill dealership. Plaintiff will be granted summary judgment with respect to the $18,128.40 in corporate checks that was transferred to defendant in November 2005 and with respect to the conveyance of the equipment in the Catskill dealership.[8]

### C. New York Debtor & Creditor Law § 276—Intentional Fraud

Blake next claims that Rozowicz committed intentional fraud in violation of DCL § 276 when he transferred the assets of Condor to himself for personal use. As explained above,

---

[8] As Blake will be granted summary judgment on the DCL §§ 273, 274, and 275 causes of action with respect to the $18,128.40 in checks and the equipment in the Catskill dealership, it is arguably unnecessary to reach the remaining causes of action for purposes of damages. However, in the interest of completeness, the remaining claims will be addressed.

there is no evidence in the record from which to infer that defendant received any portion of the approximately $600,000 related to the sale of the Catskill dealership. Therefore, this cause of action is limited to the alleged conveyance of the equipment in the Catskill dealership. Defendant makes the same argument as above; to wit, he personally owned the equipment.

To prove actual fraud a creditor must show, by clear and convincing evidence, that the transfer in question was made with an intent to "hinder, delay, or defraud present or future creditors." HBE Leasing Corp., 48 F.3d at 639. Because it is difficult to prove actual intent, it may be inferred from the circumstances surrounding the allegedly fraudulent transfer. A creditor may rely on "badges of fraud" such as a close relationship between the parties to the transaction, an inadequacy of consideration, the unusualness or haste of the transaction, and retention of control of the property by the transferor. Id.; In re Sharp, 403 F.3d at 56. If such an intent to defraud is proven, "the conveyance will be set aside regardless of the adequacy of consideration given." In re Sharp, 403 F.3d at 56 (internal quotation marks omitted).

As explained above, the only reasonable inference to be drawn from the record is that Condor owned the equipment that was leased to Mr. Romeo. Thus, for purposes of the intentional fraud claim, the issue becomes whether Rozowicz acted with the intent to defraud or hinder Condor's ability to pay the debt owed to Blake when he transferred the ownership or rental value of the equipment to himself.

Defendant again fails to satisfy his burden to establish the existence of an issue of material fact for trial. Indeed, as the president and sole shareholder of Condor, he enjoyed an obviously close relationship to both sides of any transaction that changed ownership or value of the equipment from Condor to himself. Moreover, he does not identify any

consideration whatsoever that he exchanged in return for the equipment. Finally, defendant was made aware of plaintiff's breach of contract claim by letter dated August 23, 2005. See Bartkowski Aff., Ex. F, ECF No. 58-1. In this letter, plaintiff's counsel requested an appointment to audit Condor's books in order to compute Blake's bonus. Upon learning that defendant planned to sell the Catskill dealership, plaintiff's attorney sent a letter, dated September 8, 2005, to defendant's counsel requesting that Blake be listed as a disclosed creditor in that transaction. Id. Thus, when defendant entered into the lease agreement with Mr. Romeo in November 2005, he was well aware of plaintiff's claim that Condor owed him money for outstanding compensation and bonuses.

Therefore, the only reasonable conclusion is that defendant transferred to himself the ownership or value of the equipment in the Catskill dealership with the actual intent to hinder or delay the satisfaction of Blake's outstanding debt. Accordingly, plaintiff's cross-motion for summary judgment will be granted with respect to the DCL § 276 cause of action as it relates to the leased equipment in the Catskill dealership.

### D. New York Business Corporation Law § 1006

Blake alleges that Rozowicz violated New York Business Corporation Law § 1006 ("BCL") by failing to give him notice prior to dissolving Condor and distributing corporate assets to himself upon dissolution instead of fulfilling his financial obligation to plaintiff. Defendant again argues that none of the corporate assets were unlawfully transferred to him because he already personally owned the equipment.

Under New York law, a corporation may informally dissolve by transferring all of its assets without giving any notice to its creditors. See N.Y. Bus. Corp. Law §§ 1006–1007. However, if the corporation does not provide notice, it places its directors, officers, and

shareholders at risk of acquiring liability for the corporate debt. Id. § 1008. "After dissolution, the shareholders to whom are distributed the remaining assets of the corporation are said to hold the assets which they received in trust for the benefit of creditors." In re Rodgers v. Logan, 121 A.D.2d 250, 253 (App. Div. 1st Dep't 1986) (internal quotation marks omitted). Therefore, "the shareholders remain jointly and severally liable to existing creditors of the corporation." Id.; see also Ret. Fund of the Fur Mfg. Indus. v. Getto & Getto, 714 F. Supp. 651, 656 (S.D.N.Y. 1989) (noting that shareholders are liable "to the extent of the corporate property they have received").

There is no indication that Blake received proper notice before Condor was dissolved on December 19, 2008. It is undisputed that Blake was not listed as a creditor of Condor and did not receive any proceeds from the liquidation of the corporation, despite his outstanding judgment against the corporation in the amount of $144,810.49. The only specific assets that plaintiff alleges were unlawfully converted by defendant upon dissolution is the equipment in the Catskill dealership. As it has already been determined that this equipment belonged to Condor prior to dissolution, its value also belonged to Condor. After Condor's dissolution, therefore, any corporate assets—including the equipment—should have been held in trust for the corporation's creditors.

Accordingly, plaintiff's cross-motion for summary judgment will be granted with respect to the to the BCL § 1006 claim as it relates to the equipment in the Catskill dealership.

### E. Plaintiff's Expert

Finally, Rozowicz seeks to preclude the testimony of plaintiff's expert, Louis Spada ("Spada"). Defendant argues that Spada's testimony regarding the value of the equipment is irrelevant and misleading because it considers the equipment as a "going concern"—

meaning it is being used in ongoing business operations. Defendant notes that the equipment is currently sitting in the Catskill dealership, which is no longer in operation.[9]

Expert testimony may be admitted if it is relevant and reliable. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 2795 (1993); Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141, 119 S. Ct. 1167, 1171 (1999). It is well-established that "[u]nder Daubert, the district court functions as the gatekeeper for expert testimony whether proffered at trial or in connection with a motion for summary judgment." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 311 (2d Cir. 2008) (internal quotation marks and citation omitted).

Again, the only reasonable conclusion that can be drawn from the evidence in the records is that Condor owned the equipment and that Rozowicz fraudulently conveyed it to himself. Thus, summary judgment will be granted in Blake's favor with respect to the causes of action related to the conveyance of the equipment in the Catskill dealership. The only remaining matter to be addressed is that of damages.

Generally, the remedy for a fraudulent conveyance "is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance." Capital Distribution Servs., Ltd. v. Ducor Express Airlines, Inc., 440 F. Supp. 2d 195, 204 (E.D.N.Y. 2006); see also N.Y. Debt. & Cred. Law § 278. If the assets are no longer available, however, "a money judgment may be entered against the transferee in an amount up to the value of the fraudulently transferred assets." Capital Distribution, 440 F. Supp. 2d at 204.

---

[9] It is unclear how much of the equipment in question is available. Mr. Romeo testified that "a lot of that stuff [the leased equipment] has been replaced and thrown out and discarded." Bartkowski Aff., Ex. L, ECF No. 73-1, 12:4–5.

The value of the equipment as a "going concern" becomes important because the fraudulent conveyance of the equipment either occurred when Rozowicz leased the equipment to Mr. Romeo in November 2005 or upon dissolution of Condor in December 2008. Because the equipment was in use at either time, Spada's testimony is relevant when considering the value of the equipment at the time it was conveyed to defendant. This will be helpful in calculating plaintiff's damages.[10]

Accordingly, defendant's request to preclude Spada's testimony will be denied.

## IV. **CONCLUSION**

The evidence in the record shows that defendant did not receive any of the proceeds from the sale of the Catskill dealership. It is equally clear that the $18,128.40 in corporate money he received in November 2005 constituted unlawful preferential loan repayment to Condor's sole shareholder and president. Similarly, the transfer of the ownership or rental value of the equipment in the Catskill dealership from Condor to defendant was a fraudulent conveyance.

The only outstanding matter is damages. A hearing will be conducted at which the parties may call witnesses and present evidence regarding the value and availability of the equipment at issue. The testimony of plaintiff's expert, Louis Spada, may be relevant and helpful to the calculation of damages, and he will therefore be permitted to testify at the hearing.

Therefore, it is

ORDERED that

---

[10] Defendant does not challenge the reliability of Spada's testimony.

- 17 -

1. Defendant Michael S. Rozowicz's motion for summary judgment is GRANTED in part and DENIED in part;

2. Plaintiff Richard P. Blake's cross-motion for summary judgment is GRANTED in part and DENIED in part;

3. The causes of action brought pursuant to New York Debtor and Creditor Law §§ 273-a and 276-a are DISMISSED;

4. Defendant's motion for summary judgment is GRANTED with respect to the causes of action related to the proceeds from the sale of the Catskill dealership, and those claims are DISMISSED;

5. Plaintiff's cross-motion for summary judgment is GRANTED with respect to the causes of action related to the $18,128.40 in corporate checks made payable to defendant in November 2005;

6. Plaintiff's cross-motion for summary judgment is GRANTED with respect to the causes of action related to the conveyance of the equipment in the Catskill dealership to defendant;

7. A damages hearing will be conducted on March 18, 2013, at 10:00 a.m. in Utica, New York; and

8. Defendant's request to preclude the testimony of plaintiff's expert, Louis Spada, is DENIED.

IT IS SO ORDERED.

_United States District Judge_

Dated: February 4, 2013
   Utica, New York.